**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO.  14-20025-CR-JEM**

UNITED STATES OF AMERICA,

               Plaintiff,

    vs.

                                 Miami, Florida
                                 May 7, 2014

CARL FIORENTINO,

               Defendant.
_____

**TRANSCRIPT OF HEARING ON**
**DEFENDANT'S MOTION FOR PROTECTIVE ORDER**
**BEFORE THE HONORABLE BARRY L. GARBER**
**UNITED STATES MAGISTRATE JUDGE**

**APPEARANCES:**

**FOR THE PLAINTIFF:**       *United States Attorney's Office*
                         **BY:  JERROB DUFFY,  A.U.S.A.**
                         99 Northeast Fourth Street
                         Miami,  Florida 33132

**FOR THE DEFENDANT:**     *Sylvia B. Pinera-Vazquez, P.A.*
                         **BY:  SYLVIA PINERA-VAZQUEZ, ESQ.**
                         International Center
                         1900 Southwest Third venue
                         Miami, Florida 33129

                         *David M. Garvin, P.A.*
                         **BY:  DAVID GARVIN, ESQ.**
                         200 South Biscayne Boulevard
                         Suite 3150
                         Miami, Florida 33131

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1   FOR SYSTEMAX AND TIGER DIRECT:

 2                        Akerman, LLP
                         BY:  MICHAEL MARSH, ESQ.
 3                       BY:  RYAN ROMAN, ESQ.
                         BY:  DARRYL GRAHAM, ESQ.
 4                       One Southeast Third Avenue
                         Suite 2500
 5                       Miami, Florida 33131

 6
     REPORTED BY:        DAWN M. WHITMARSH, RPR
 7                       Official Court Reporter
                         400 N. Miami Avenue, 10S03
 8                       Miami, Florida  33128
                         Telephone:  305-523-5598
 9   _____

10                       P-R-O-C-E-E-D-I-N-G-S

11            COURTROOM DEPUTY:  All rise.  United States District

12   Court is now in session, the Honorable Barry L. Garber

13   presiding.

14            THE COURT:  Be seated please.

15            COURTROOM DEPUTY:  Calling case number

16   14-criminal-20025, United States of America versus Carl

17   Fiorentino.

18            Counsel, please state your appearance for the record.

19            MR. DUFFY:  Good afternoon, Your Honor.  Jerrob Duffy

20   for the United States.

21            THE COURT:  Yes, sir.

22            MR. MARSH:  Good afternoon, Your Honor.  Michael Marsh,

23   Ryan Roman, Darryl Graham of Akerman, LLP for Systemax and Tiger

24   Direct.

25            THE COURT:  All right.  Thank you.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1              MS. PINERA:  Good afternoon, Judge Garber.  Sylvia

 2    Pinera on behalf of Carl Fiorentino, who is sitting to my left,

 3    Your Honor.

 4              THE COURT:  All right.

 5              MR. GARVIN:  Good afternoon, Your Honor.  David Garvin

 6    also on behalf of Carl Fiorentino.

 7              THE COURT:  All right.  Thank you all.

 8              We're here to consider basically two motions, as I

 9    understand it.  Let's take up the first motion for limited

10    intervention filed on behalf of nonparties Systemax and Tiger

11    Direct.

12              May I hear from the moving party at this time.

13              MR. MARSH:  Thank you, Your Honor.  Systemax and Tiger

14    Direct's motion to intervene, Your Honor, for these limited

15    proceedings, is well taken.  It is exclusively -- this matter,

16    this protective matter that is before Your Honor is exclusively

17    focused on discovery requests that were made in state court

18    proceedings before Judge Thornton.  Judge Thornton ruled that

19    the discovery requested by Systemax and Tiger Direct must be

20    disclosed.

21              The protective order that's before Your Honor seeks to

22    undermine or even at some level overturn that order.

23              THE COURT:  Didn't Judge Thornton stay the effect of

24    his order?

25              MR. MARSH:  Excuse me, Your Honor?
```

1          THE COURT:  Didn't Judge Thornton enter a stay?

2          MR. MARSH:  No, he did not, Judge.  What Judge Thornton

3   did in New York -- Judge Thornton was concerned about exactly

4   what is transpiring here.  That there would be some significant

5   delay in the production of those documents.

6          At the hearing on the motion to compel, Your Honor, the

7   defendant, Carl Fiorentino's attorneys raised the issue of

8   heeding to protective order for any number of reasons.  Judge

9   Thornton heard all the merits, the same arguments that Your

10   Honor is hearing today Judge Thornton heard, considered,

11   rejected and ordered production.

12          What Judge Thornton did in the order was said okay, if

13   you want to go get a protective order, you can go get one.  You

14   have, contrary to what Mr. Fiorentino is saying is that there

15   was some condition that there is this never-ending open deadline

16   for him to go get a protective order, what Judge Thornton said

17   was I don't want this to go on for 30, 40, 60 days, so what I'm

18   going to do is I'm going to give you 20 days to produce, you

19   have 20 days to produce the documents, which has since been

20   extended to May 1.  If you obtain a protective order before the

21   expiration of those 20 days, I'll honor whatever the federal

22   court says.  But at no point did Judge Thornton say you can

23   withhold production until you obtain a protective order.

24          In fact, that's how the initial order was written.  If

25   Your Honor will look at the March 25th order, the word -- it

1    initially, as written, seeks a protective order, right?  That

2    was stricken by His Honor, consistent with his comments at the

3    hearing, to include the word "obtained".  So where the order is

4    and what Judge Thornton intended and what is clear from the

5    order is that Mr. Fiorentino was required, required to get --

6    obtain the protective order by May 1.  If he did not, he was

7    required to produce the documents ordered by the court.

8    Recognizing again, Judge, that His Honor heard all the arguments

9    that's before Your Honor and rejected them.

10         So what Mr. Fiorentino's asking you to do now by way of

11    this protective order is overturn a state court judge who heard

12    these arguments, applied Florida state law, rejected the

13    arguments and ordered discovery of information that no one has

14    disputed is highly relevant.  And nowhere in his papers does Mr.

15    Fiorentino say to Your Honor these documents are not relevant.

16    They're highly relevant documents that are significant to the

17    claims in the state court case.  And because this protective

18    order is designed to undermine that order, we have a protectable

19    interest, Your Honor, that allows us, gives us the right at some

20    level to come in and speak to Your Honor about our position

21    because we will be most impacted by this, not the government, we

22    being Systemax and Tiger Direct.

23         So Your Honor, the government itself has stated that

24    they don't have any involvement.  So the government says they

25    didn't even know about the proceedings with respect to our

1   request to obtain the discoverable information, the motion to

2   compel, the hearing on the motion to compel, the order, what

3   went into the order, government had no idea about it until Mr.

4   Fiorentino's counsel raised it to him.  With that, the

5   government can't adequately protect our interests here because

6   the government doesn't have a knowledge of what happened at the

7   state court level.

8          So at some level -- and also one other important point,

9   Your Honor.  In response to the motion to intervene, Mr.

10  Fiorentino does not dispute that we have a protectable interest

11  that must be presented to Your Honor.  Another issue -- so he

12  doesn't dispute the relevance of the documents and he doesn't

13  dispute that we have a protectable interest.  In fact, all he

14  says is that the government can represent our interests which,

15  as I just explained Your Honor, is not appropriate under these

16  circumstances.

17         So with that, Your Honor, we believe that the motion to

18  intervene is well-taken and should be granted.

19         THE COURT:  All right.  Thank you.  Response?

20         MR. GARVIN:  Good afternoon, Your Honor.

21         THE COURT:  Yes, sir.

22         MR. GARVIN:  Your Honor, with regards to the motion to

23  intervene before we get to the actual merits, it is the position

24  of Mr. Fiorentino that first, this is a criminal case in federal

25  court that supersedes the civil case.

1          Second, that the United States Government adequately

2     protects the interest of the third party, in this case Systemax

3     which purports to be the victim.  The indictment in this case is

4     a parallel indictment to the civil case and virtually tracks the

5     same allegations.

6          In addition to that, what is being asked for at this

7     time is access to documents that are not public court records.

8     They have not been introduced into evidence, they have not been

9     filed with the clerk.  They are part of the discovery, which

10    well-established case law states that they are not discoverable

11    by a third party.  Most of those cases are in the forum of news

12    agencies that seek access and have been uniformly denied

13    discovery items because they are not public records in the court

14    system.

15         But more importantly, addressing the initial stage

16    which is should this moving third party be permitted to

17    intervene in a decision by this Honorable Court whether to issue

18    a protective order for this discovery.  And the answer to that

19    question is no.  They should not be.  This particular case, the

20    government is well-suited for addressing each and every issue

21    regarding discovery and addressing each and every issue

22    regarding the indictment and that is the gravamen of this case.

23         In addition to that, we happen to have a copy of the

24    transcript of the proceedings and what was said by the court in

25    part during the hearing on this matter was quote --

```
 1          MR. DUFFY:  Your Honor, I object, actually a copy of

 2   that transcript was never produced to the government and I don't

 3   have a copy of this.

 4          THE COURT:  Mr. Garvin, do you have a copy for him?

 5          MR. GARVIN:  I did not.  Excuse me.

 6          MR. DUFFY:  There were multiple pleadings filed in this

 7   matter.  A copy of the transcript could have been filed with the

 8   court or provided to the government.  He's reading from a

 9   transcript, Your Honor, and in the context of saying that the

10   government can somehow protect interests when the government has

11   no idea what the transcript says, wasn't participating in the

12   underlying hearing, hasn't been provided with anything in the

13   pleadings.

14          THE COURT:  How long is that transcript, how many

15   pages?

16          MR. GARVIN:  The one page that I mentioned is page six,

17   Your Honor.  But from what I can see here, the condensed version

18   that appears to be 14 pages, Systemax has a copy of it.  And the

19   motion that I'm addressing at this point, Your Honor, is

20   Systemax's motion to intervene, but that answers the court's

21   questions directly.  I'm only referring to -- I'm presenting

22   counsel with a copy at this time.

23          THE COURT:  All right.  When you make your argument,

24   refer specifically to page and line, if possible.

25          MR. GARVIN:  Yes.  Page six, line seven.
```

1          "The Court:  Here's what I'm going to do.  I'm going to

2     order it produced subject to a couple of things.  Number one, is

3     attorneys' eyes only, it is not for publication.  And then

4     number two is also subject to whatever Judge Martinez orders.

5     If there is a -- if you all have any objection to this order,

6     then you take it before him.  You know, I mean, whatever Judge

7     Martinez says, I'll go with it."

8          So I'm addressing that party of the argument by counsel

9     that the judge never intended for the federal court to make the

10    final decision in this matter, when clearly he did.  And yes,

11    the order says if in 20 days of this order Carl Fiorentino

12    obtains a protective order in the criminal proceeding, this

13    order and ruling are subject to the federal court's protective

14    order, if any.  We filed in a timely fashion the motion, and

15    this court has a great deal of cases, and Judge Martinez is one

16    of our federal judges that has a great deal of cases before it.

17    He then referred it to this Honorable Court which this court

18    only received it last Thursday.

19         So I don't think that it is well-founded to argue that

20    because the matter did not have enough time to get before this

21    Honorable Court within 20 days, that somehow the defendants are

22    out of luck.  I believe that the court always intended, Judge

23    Thornton in state court, always intended to give the defendant a

24    fair opportunity to get before this Honorable Court to decide

25    the issue on the merits.  However, that gets us to the

1    substantive argument as to whether or not a motion for

2    protective order should be granted.  The initial motion, which

3    is Systemax's motion to intervene in this particular case, we do

4    not believe should be granted.

5            In fact, Your Honor, the cases that were previously

6    cited in our motion, in addition to those cases we have found

7    two additional cases today, which I have copies here for counsel

8    and they are not Eleventh Circuit cases, but they do support the

9    Eleventh Circuit case that we cited, one being *Harrelson versus*

10   *United States* found at 967 Fed Supp 909, and the second being

11   *United States versus Loughner*, spelled L O U G H N E R, found at

12   807 Fed Supp 2d 828.  In *United States versus Loughner*, the

13   court found that the investigation of materials subject to the

14   order were not judicial records subject to release to news

15   organizations.

16           And in the case of *Harrelson*, the court found in that

17   case that a former trial counsel's motion to intervene into a

18   2255 matter in which he was being alleged to have provided

19   ineffective assistance of counsel, his motion to intervene was

20   denied as the court found that the government could --

21   adequately would represent the interests of the parties.  In

22   that case, counsel argued that he was board-certified and that

23   the allegations in the 2255 motion might affect his board

24   certification.  The court found that the interests, his

25   interests and the government's interests were so aligned that

1    his motion to intervene should be denied.

2         We feel that we have the same situation here.

3    Systemax's interests and the interests of the United States,

4    given the nature of the complaint in civil state court and the

5    criminal indictment in this case, are so closely aligned that

6    Systemax's interests will be adequately represented and

7    preserved in this case by the United States and the United

8    States Attorneys Office.

9         In addition to that, because this is a criminal case,

10   as this Honorable Court well knows, there is no criminal rule of

11   procedure that is the equivalent of Rule 24 in the civil --

12   federal civil rules of procedure that state that intervention is

13   permitted.  So in this particular case, we believe given the

14   facts and circumstances, that this Honorable Court should deny

15   the motion to intervene and should permit the United States

16   Attorney's Office to represent to the United States, as well as

17   the alleged victim, and in determining whether or not the motion

18   for protective order with regard to discovery should be granted.

19        Thank you, Your Honor.

20        THE COURT:  All right, sir.  Thank you.

21        Any reply?

22        MR. DUFFY:  Your Honor, can the government be heard on

23   the motion?

24        THE COURT:  Pardon?

25        MR. DUFFY:  Can the government be heard on the motion

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    to intervene?

2          THE COURT:  I'll hear from you.

3          MR. DUFFY:  Thank you.

4          Your Honor, the issue before the court on the motion to

5    intervene is whether or not there's an interest on the part of

6    the party that seeks to intervene that will be adjudicated by

7    the court in the underlying issue.  And here, I liken it to a

8    third party privilege holder who seeks to intervene to preserve

9    their privilege, for example.  They, I think as we've seen just

10   a moment ago from the argument by counsel for Fiorentino, that

11   as counsel for the United States, I don't know what the

12   underlying proceedings were in the civil case.  We don't have

13   anything to do with them.

14         As a practical matter, I'm an Assistant US Attorney

15   here in Miami, this case was transferred from the Eastern

16   District of New York by Rule 21 transfer in January of this

17   year.  The Assistant US Attorney who previously handled the

18   matter in New York has retired and is no longer assigned. I have

19   been counsel of record from shortly after the case was

20   transferred and will continue to as lead counsel for the United

21   States in this case.  But from the get-go, I don't know much of

22   anything about that underlying civil proceeding.  I can

23   represent that to the court.

24         With regard to this motion itself, I was involved

25   indirectly in some initial conversations from -- with my prior

1    co-counsel and the defense with regard to what the government's

2    position was, and I can represent to the court the government

3    didn't understand the scope of what the defense was seeking in

4    this motion until it was filed, until we saw it.  And it appears

5    that the motion itself is without precedence.  And before

6    getting into the substance of the motion just on the issue of

7    intervention, because this motion is without precedence, there

8    is not a case that any party has cited that is on point as to

9    what is being sought here.  It would be hard, I think, for the

10   defense to say that the rights of a third party, that clearly

11   are going to be adjudicated here, are such that that third party

12   ought not be heard.  So I think from the government's

13   perspective, we do not oppose the third party motion to

14   intervene.

15            I can get to some of the arguments about whether or not

16   the Systemax litigation is somehow coordinated with or being

17   controlled by the government, but I can just represent to the

18   court that that is not the case.

19            I will address any other points the court may have on

20   the issue of intervention if you have any questions for me.

21            THE COURT:  If the court were to grant this

22   intervention, how would it affect the government if at all?

23            MR. DUFFY:  How would it affect the government?

24            THE COURT:  Yes.

25            MR. DUFFY:  Well, first of all, the government is the

1    Plaintiff in this case.

2              THE COURT:  I understand.

3              MR. DUFFY:  So we're, you know, we're -- on the

4    intervention itself, then at that point the court would hear the

5    argument substantively of the third party intervener.  I will

6    tell you that it would assist the government in terms of

7    understanding the underlying factual record because as I can, I

8    think, point out from this hearing already, there have been

9    portions of the underlying record that were just read to the

10   court which myself as counsel for the government, I have no idea

11   what those were.  They certainly weren't attached to the

12   underlying pleadings.

13             So on the one hand it would assist the United States,

14   and frankly the court, in understanding the underlying

15   proceedings because you now have one advocate who has referenced

16   for you what happened in the underlying proceedings and how this

17   motion relates to a state court motion, but you don't really

18   have an advocate on the other side to give you a counterpoint if

19   there is a counterpoint to be given.

20             THE COURT:  So I read what you're saying that it would

21   not negatively affect the United States.

22             MR. DUFFY:  No, Your Honor.  To the extent that it

23   would inform the government, it would actually potentially

24   positively affect the government.

25             THE COURT:  All right.  Thank you.

1         MR. DUFFY:  I can answer any other questions that you

2    may have.

3         THE COURT:  I don't have any at this time.

4         MR. DUFFY:  Thank you, Your Honor.

5         THE COURT:  Yes, sir.

6         MR. MARSH:  Briefly Your Honor, addressing a couple of

7    the points that were raised.

8         The simple, practical matter case law cite, and

9    Mr. Duffy is correct, there isn't a particular case exactly on

10   point, but just practically what Mr. Fiorentino is asking for in

11   this court, the relief, the protective order, is undeniable that

12   it directly affects Systemax and Tiger Direct.  It overturns an

13   order previously entered by the state court.

14        THE COURT:  Well, the state court indicated that it

15   probably would not be offended if it were overruled.

16        MR. MARSH:  Yes, Your Honor, if it was done within the

17   20 days.  And we're going to get to this in some kind of a

18   merits discussion that was brought up before.

19        Mr. Garvin conveniently stopped when he was reading the

20   transcript on page six because the very next line from the court

21   says "but at this particular point, I am ordering that it be

22   produced and that it be produced within 10 days."  It was 10

23   days when they were seeking -- about seeking an order, a

24   protective order.

25        When that changed in chambers after -- in state court,

1    generally you have to draft the order and there are discussions

2    after, so it's not in a transcript.  But when that discussion

3    ensued afterward and the order was changed to obtain a

4    protective order in order to give them additional time, the

5    judge made clear that it was simply you've got to produce within

6    20 days, it's now extended to May 1, and when and if you don't

7    get the order within 20 days, you have to produce.

8         In fact, when the judge denied the second motion for

9    extension, the judge specifically made clear, and we'll get into

10   this some more, that his previous order is in effect and they

11   have to produce.  In the back of the transcript, and I can read

12   it later, the judge goes on about he doesn't want this dragging

13   out like it has now.

14        So what you have here -- but just focusing on the

15   intervention motion, Judge, just this whole discussion, it is

16   clear from Mr. Duffy's statement that the government can't

17   represent Systemax's and Tiger Direct's interests.  It is clear

18   that Systemax and Tiger Direct will be adversely impacted in an

19   order granting a protective order in this matter.  So at that

20   point, Judge, regardless of what the case law says, and there's

21   no case that addresses this, from a practical matter, from a

22   fairness, due process matter, we have a right to intervene, to

23   protect our interests against a potential order that would bar

24   discovery in the state court proceeding, especially, especially,

25   Judge, when this motion emanates from a court order in that

1  state court proceeding.

2       THE COURT:  All right.  Thank you.

3       I've reviewed the submissions of the parties, I've

4  heard the argument of the parties and I see no particular

5  downside to granting this motion for limited intervention, I'm

6  going to grant it.  The court will consider the response to be

7  filed in opposition to the motion for protective order.

8       Let's consider the motion for protective order at this

9  time if we can.  Are the parties prepared to proceed?

10       MS. PINERA:  Yes, Your Honor.

11       MR. DUFFY:  Yes, Your Honor.  Thank you.

12       THE COURT:  Proceed.

13       MS. PINERA:  Thank you, Judge.

14       Judge, I want to be clear from the get-go, we're not

15  asking for a protective order to prevent Mr. Fiorentino from

16  disclosing documents in the civil case.  We are requesting a

17  protective order to protect Mr. Fiorentino's Sixth Amendment

18  rights and the integrity of the criminal process.

19       As I sat here for the past 20 minutes listening, it

20  seems like the most important thing for these parties, and

21  possibly even the United States, is the civil case.  That is not

22  Mr. Fiorentino's prime interest.  So I want to address certain

23  statements made which go to the merits in the protective order.

24       The first one, that there is no case on point.  Seminal

25  case in the Eleventh Circuit was cited in our brief, and I don't

1    want to reiterate what's been cited in our motion because I'm

2    sure the court has read it, but I want to do certain highlights.

3    *United States versus Anderson*, 799 Fed 314 38.  This

4    case, which has been cited until last month, and I have copies

5    for the court, basically stand for the proposition, it's a 1984

6    case, that discovery, whether civil or criminal, is essentially

7    a private process and not typically a matter of public record.

8    Now, this is an Eleventh Circuit case, Judge.  It is a criminal

9    case.  And in that case, the third party was not the alleged

10   victim, it was a newspaper entity.  However, it is a criminal

11   case and the court took great pains in relying on *Seattle Times*,

12   which is a Supreme Court case, stating that the most important

13   part of discovery is for the parties to have access and the free

14   flow of information, and that the only purpose is for trial

15   preparation.  And I'm focusing on trial preparation for the

16   criminal case because we have a different set of rules than the

17   civil case.  Now, relying on this proposition, and the

18   constitutional mandate, that Mr. Fiorentino receive a fair

19   trial, courts within this district routinely, routinely grant

20   protective orders.

21       Now, the unique thing about this case is that usually

22   it's the government requesting the protective orders, and I

23   personally have signed off on many protective orders saying that

24   I have no objection.  In fact, last week, Judge Martinez entered

25   a protective order in a Medicare fraud that I'm involved in, a

1    Medicare case that I'm involved in.  I'm also -- there's

2    protective orders in national security cases that I'm involved

3    in, so this is not unusual, and it's not unusual, particularly

4    in a case that is highly data intensive.

5         We have -- at this juncture, we haven't been able to

6    open some of the hard drives that were produced, but there is

7    essentially two hard drives with -- four terabytes?  Terabytes

8    of information.  We have the four discovery disks that Systemax

9    is asking for, in addition to a hard drive.  So this isn't like

10   in the old days when we used to get five Bankers boxes, and we

11   could simply go through them and decide oh, this is protected,

12   this is not.  No.  This is a data intensive electronic discovery

13   case.  So routinely in this district, confidentiality orders and

14   protective orders are always asked for usually by the government

15   and granted.  In fact, in the civil case, they keep mentioning

16   there's a protective order in place in that case.  So I think

17   the point I'm trying to make is that it bears noting that the

18   government does not agree with this protective order when in

19   fact it routinely requests protective orders in data intensive

20   cases.

21        Now, I have asked the government, and I did this late

22   yesterday, I concede that, whether or not any documents have

23   been shared with Systemax that were Rule 16 documents.  And

24   Mr. Duffy has not been able to provide answer.  As I said, he

25   came on new to the case, he has not provided the answer, so I

 1   don't know if any of these documents have already been shared

 2   with Systemax, the Rule 16 discovery.  That's something that we

 3   still have out there.

 4          A second instructive case, because they keep saying

 5   that there is no case on point, is the old *ESM* case.  Now, this

 6   takes the court back many years, it is a 1987 case, and it's not

 7   a criminal case, it's a civil case, *In Re:  Alexander Grant and*

 8   *Company, Limited* or *LLC*.  There, the court articulated very

 9   specifically -- and actually Your Honor, may I hand over a copy

10   of the case?  I've already given it to the prosecutor.

11          The Eleventh Circuit, it's also an Eleventh Circuit

12   case, the court articulated reasons why a third party --

13          MR. DUFFY:  Sorry, Judge?  Which case?  Excuse me.

14          MS. PINERA:  *In Re:  Alexander Grant and Company*, I

15   believe it's the third case in the documents that I just

16   provided, the packet I provided.

17          MR. DUFFY:  No it wasn't, it only had two.

18          MS. PINERA:  I think that's the one that Mr. Garvin

19   provided.

20          MR. DUFFY:  Oh.  Thank you.

21          MS. PINERA:  May I continue, Your Honor?

22          THE COURT:  Yes, go ahead.

23          MS. PINERA:  So in that Eleventh Circuit case, the

24   court articulated reasons why a third party who sought to

25   intervene and challenge the propriety of a court's protective

1    order was not entitled to the documents.  And really, the

2    essence and the primary question for this court is whether or

3    not we have shown good cause.  We -- because we are the party

4    seeking the protective order.

5         There's no question that aside from what we have filed

6    in court, there is good cause for the court to issue the

7    protective order.  First of all, there is no prejudice to

8    Systemax.  Systemax will receive these documents once the case

9    is over, once the criminal trial is over, assuming the case goes

10   to trial.  We have no objection to turning those documents, the

11   entire everything after the case is over.  And they put a caveat

12   to that because there could be third party interests including

13   financial records and social security numbers and third parties

14   that may object to the disclosure of that information. However,

15   Mr. Fiorentino will suffer irreparable harm if these documents

16   are disseminated to a third party.

17        THE COURT:  How so?  Tell me how?

18        MS. PINERA:  Because number one, they will have the

19   ability to influence -- they'll get a full picture of what the

20   government's case is and what the government's evidence is.

21   Evidence that they got as a result of a grand jury

22   investigation.  Documents that Systemax would have been

23   necessarily able to obtain in the regular course of a civil

24   case.  Documents that have privacy information regarding Mr.

25   Fiorentino's wife, his children, third parties.

1           But more importantly, you asked me specifically how.  I
2     think it's pretty clear, having Systemax sit at the table with
3     the government.
4           MR. DUFFY:  Objection, Your Honor.  That's an improper
5     argument.  There's only so many tables in the courtroom.
6           THE COURT:  I'll sustain the objection.
7           MS. PINERA:  I think it's pretty clear that based on
8     the pleadings and the papers filed, that Systemax has a unique
9     vested interest in this case.  We have, and this is information
10    that we are preparing, evidence that Systemax has had a history
11    of coercing and affecting the testimony of witnesses in this
12    case.  This is --
13          MR. MARSH:  Your Honor, are we going to go down the
14    path of --
15          THE COURT:  Let her proceed.  You'll have an
16    opportunity to respond.
17          MR. MARSH:  Thank you, Judge.
18          MS. PINERA:  So they're now going to have possibly
19    witnesses, documents that they did not know existed and maybe
20    have no relevance to their case, but are certainly relevant to
21    the criminal case.  So we are concerned that they will somehow
22    attempt to affect the process in this criminal case where that
23    could be considered obstruction of justice and tampering with
24    witnesses.  However, in the state case, we are in the process,
25    as I said, of preparing certain documents where it hasn't been

1   presented, but it has happened.  So that's our primary concern,

2   that of course goes to Mr. Fiorentino's ability to receive a

3   fair trial.

4           But more importantly, Judge, there is an ongoing grand

5   jury investigation.  The government has represented that there

6   is an ongoing grand jury investigation, a second one.

7           MR. DUFFY:  Objection, that's not accurate.

8           MS. PINERA:  Your Honor --

9           THE COURT:  All right.  Tell me what is the argument.

10          MR. DUFFY:  The United States has not represented

11  whether or not there is an ongoing grand jury investigation.

12          THE COURT:  Is there one?

13          MR. DUFFY:  I could respond at sidebar, Your Honor.

14          THE COURT:  All right.  Come forward.

15          MS. PINERA:  Ex-parte Your Honor? Over here?

16          THE COURT:  Stay there.

17          (Inaudible)

18          THE COURT:  All right.  Let's go ahead and proceed.

19          MS. PINERA:  Based on the information we received

20  including grand jury subpoenas issued very recently --

21          THE COURT:  All right.  Go ahead.

22          MS. PINERA:  -- we have information that there is an

23  ongoing grand jury and subpoena, the government has never

24  denied, and I've spoken to the Eastern District of New York

25  prosecutors who are not here today, so there is an ongoing

1    investigation going on, more towards the IRS tax records or the

2    tax filings of Mr. Fiorentino.  Now, this investigation is

3    directly based, as far as we can tell, again, I'm not the

4    prosecutor on the case, on this case that's currently before the

5    court.  Accordingly, there is inextricably intertwined documents

6    potentially that the third party, the alleged victim, Systemax,

7    will obtain can actually have an effect on the ongoing grand

8    jury investigation and decision as to whether or not to present

9    indictment as to whether or not to proceed, it could potentially

10   have an effect.

11          The question is, it's the perception, the appearance

12   because the most important thing here, Your Honor, is Mr.

13   Fiorentino's Sixth Amendment rights.  He's fighting for his

14   life, he's fighting for his liberty.  He doesn't care about the

15   civil case and the money.  He's fighting for his liberty.  And

16   the fact that these documents could land in the hands of a third

17   party that could affect not only the current case, but an

18   ongoing grand jury investigation, requires a protective order

19   solely for the purpose of protecting the integrity of this

20   process.

21          Lastly Your Honor, actually there's one more thing.

22   Systemax comes in here and says that wow, we need every single

23   piece of document that was turned over under Rule 16.  And I

24   don't want to litigate this because they're claiming we litigate

25   it in the civil case.  My concern, Your Honor, is that there's

1    alternatives for them receiving the information that they claim

2    is so necessary.  Obviously if they haven't sought those

3    alternative means, then the only way they could have obtained

4    those documents is through grand jury.  It's a fishing

5    expedition.  They have no idea what's in those documents.  Of

6    course, some of them are related because it's a parallel

7    investigation.  It's a civil case and a criminal case exactly

8    the same.  Our main concern is protecting Mr. Fiorentino's

9    rights here, and that he is able to use those documents, contest

10   the chain of custody, contest the voracity, contest the

11   authenticity and to do that against one entity, the government.

12         Otherwise, essentially what the government has

13   represented is they're going to sit down and they're going to go

14   back and forth and discuss well, can you help us with this, can

15   you help us with that.  I mean, they basically want to share

16   grand jury materials with Systemax so they can explain to them

17   the process.  By now the government doesn't --

18         MR. DUFFY:  Objection.

19         MS. PINERA:  If the government doesn't understand the

20   process by now --

21         THE COURT:  Hold on a second.  What's your objection?

22         MR. DUFFY:  My objection is that that's a baseless,

23   improper argument to say that the government somehow wants to

24   share grand jury materials with Systemax.  That's not an issue

25   before the court.

1          THE COURT:  All right.

2          MS. PINERA:  I'm sorry, Judge, but I thought that's

3     what I heard him say, that they wanted to assist the government

4     in understanding the documents.  The documents were obtained

5     pursuant to a grand jury investigation, so they're sharing grand

6     jury documents that are currently Rule 16 documents.

7          So lastly, Judge, if I could -- I think that's it, Your

8     Honor.  So we're going to rely on the *Anderson* case and the *ESM*

9     case which are precedent, have precedential value, they're

10    Eleventh Circuit cases, and they do firmly state that protective

11    orders are at the discretion of the court if good cause is

12    shown.  And thus, based on the fact that we have a criminal

13    trial coming up, the civil trial is set, I believe for January,

14    we have filed a motion to continue which is going to be heard

15    tomorrow before Judge Martinez.  So we request that the

16    protective order be granted until this case is over, be it a

17    trial or be it resolved in any other matter.

18          THE COURT:  All right.  Thank you.  Response?

19          MR. DUFFY:  Thank you, Your Honor.

20          Your Honor, the most important thing about this motion

21    is that every case cited by the defense in support of its motion

22    is a third party seeking to intervene in an ongoing federal case

23    to obtain discovery or documents that are being somehow made

24    available or produced in that instant criminal case.  The

25    difference here, the significant difference, is that this

1   defendant seeks an order to preclude him from producing

2   materials that a court has ordered him to produce in a separate

3   civil litigation.  There is not a single case that I found or

4   that the defense cited in support of its motion that lends

5   support for protective order under these circumstances.  Not one

6   case.  So the question is, what's really going on here.  And

7   whether or not the court ought to buy into what the defense is

8   selling.

9       And when you look at the rationale behind some of the

10  different cases that the defense has cited, for example, in its

11  reply, there are Supreme Court cases where, for example, the

12  press wants to intervene, or for example, where there's a

13  national security issue at interest.  Here there is no record

14  before the court that the government has sought to do anything

15  that is improper.  Nothing.  There was some argument here by

16  counsel, but nothing to put into this record to say well, the

17  government has engaged in improper conduct or has done something

18  with regard to grand jury materials or discovery materials that

19  needs somehow to justify court intervention or supervision.  Not

20  anything about the court.

21      So, you know, I would say this:  The motion was filed

22  and the government initially was unclear as to whether or not it

23  was going to oppose the motion because it wasn't certain what

24  the defense was seeking until it saw the motion filed by the

25  court.  And then Judge Martinez ordered the government to

1    respond and upon that order, we, of course, responded in our

2    opposition because the motion is without support in the law.

3           If the court has any questions, I'll respond.

4           THE COURT:  None whatsoever.

5           MR. DUFFY:  Thank you.

6           THE COURT:  Thank you.  Any brief reply?

7           MS. PINERA:  Thank you, Judge.

8           I agree, you should ask yourself, Your Honor, what is

9    really going on here and whether you should buy into it.  I

10   agree 100 percent.  Why is the government opposing a protective

11   order that has two Eleventh Circuit court cases supporting it?

12   Why are they so anxious to share this Rule 16 discovery with

13   Systemax and the alleged victim, Your Honor.  Why until -- why

14   can't they wait until the trial.  This is unprecedented, I have

15   never seen it in any case.

16          The next thing I want to just clarify is Mr. Duffy was

17   not the prosecutor whom I spoke to when I sought what the

18   position of the government was regarding my motion for

19   protective order.  It was the AUSA in New York.  And as I state

20   in my certification, she simply stated "we can't join in the

21   motion".  That was her direct quote, that's never been

22   contested.  Mr. Duffy comes onboard and then he, for whatever

23   reason, elects to file the opposition motion.

24          So Your Honor, at this juncture, we would rely on our

25   papers, argument, but the most important focus in this case and

1   before this court is Mr. Fiorentino's rights to receive a fair

2   trial and to protect the integrity of the system.  Not the civil

3   case, not the money involved in the civil case, but the liberty

4   of the defendant.  So we're requesting that the protective order

5   be entered for the limited purposes of this trial or any other

6   resolution of the case.

7           THE COURT:  All right.  Thank you.

8           Anything further from either party?

9           MR. MARSH:  May I, Your Honor?

10          THE COURT:  All right. Yes, sir.

11          MR. MARSH:  Your Honor, I'll try not to repeat some of

12   the merits discussion that we had before.

13          What was interesting in Ms. Pinera-Vazquez's

14   presentation is that it's gone from a motion to protect, motion

15   for protective order, to prohibit disclosure of the information

16   that's the subject of this hearing, to a protective order to

17   stay disclosure or discovery in a civil proceeding until the

18   criminal proceeding is over.  Problem with that is it, once

19   again, asks Your Honor to overturn a specific order by Judge

20   Thornton.  A motion to stay the civil case was made by Mr.

21   Fiorentino, stay pending resolution of the criminal proceeding,

22   Judge Thornton denied that motion.  So again, you're being asked

23   to overturn Judge Thornton in the federal proceeding.

24          With respect to the cases that have been cited,

25   including the two Eleventh Circuit cases that Your Honor has

1   heard about, those cases are press cases where the press is

2   seeking information and the court has somehow issued a

3   protective order against the press obtaining that information.

4   That's not the case here.  I think Mr. Duffy made that point,

5   but an additional point Your Honor, Judge Thornton was very

6   thoughtful in his order.  He heard the arguments about

7   constitutional rights being impacted or impeded and he listened

8   and here's what he did.  He built in protections in that order

9   first and foremost.  There's an "attorney's eyes only" provision

10  and Your Honor, I stood up myself and asked the judge, Judge

11  Thornton, if I could disclose it to the general counsel of the

12  company.  He said no.  Only outside counsel.  In addition, he

13  made the specific ruling that no publication of the information

14  be had.

15       Ms. Vazquez says there's a protective order in the

16  state court.  She has thrown around the term "this court has

17  entered many protective orders similar to this".  We haven't

18  really been shown one protective order that the court has

19  entered in a similar situation.  She referred -- the only

20  protective order she referred to is the one in the state court.

21  That's your standard confidentiality agreement in a state court

22  civil litigation.  So that's a third protection for the

23  information that's here.  And what Judge Thornton envisions, and

24  you'll see it from the transcript, is that if any of that

25  information is to be used by the plaintiffs, Systemax or Tiger

1    Direct, the parties will have the opportunity to go back before

2    Judge Thornton and make a case for why it should be used and

3    make a case for why it should not be used.  So under no

4    circumstance will constitutional rights be impeded. Under no

5    circumstance will the information be disclosed to the public.

6    It is a private litigation matter which puts us squarely in the

7    four corners of all the cases that Carl Fiorentino has cited.

8        In addition Your Honor, there was some conversation

9    about the volume of information.  Never heard that before.  So

10   what we have here are four disks which Judge Thornton said there

11   are four disks, just give it to them.  There's not a big

12   problem, given the protections I've put in place, what's the

13   harm, what's the issue.  There's no review time necessary, they

14   can't use it anyway and if there's something that the plaintiffs

15   want to use, they have to come back to me.

16       So now we hear about a hard drive.  In civil

17   litigation, if you have that issue, you work it out.  So if

18   there's a hard drive that is too voluminous to review and

19   produce, a protective order staying the civil case pending the

20   outcome of the criminal case is not the right result because

21   what you've done is you basically, again, have gone around Judge

22   Thornton's order and put the civil case on the shelf until the

23   criminal prosecution is done, at which point there would also be

24   a fight over what's presented and what's not presented.

25       We also heard about the admissibility of information in

1   the civil case, as to whether or not suppression motions will be

2   granted or not.  That has no impact, Judge, on a civil case.

3   Different standards, reasonable doubt, different criteria for

4   suppressing information in a criminal case versus preponderance

5   of the evidence in the civil case and admissibility of the

6   documents.  So, Judge, at some point in either case, Mr.

7   Fiorentino, unlike the plaintiffs, will have two bites at the

8   apple as it is.  He'll get to argue suppression in the criminal

9   case and if unsuccessful, will still get to argue in

10   admissibility in the civil case.  He's not precluded one way or

11   the other.

12         There's also a question, the statement that no

13   prejudice to Systemax if the civil case is stayed pending the

14   criminal case, and I've already made clear to Your Honor that

15   was already argued and litigated and decided against Mr.

16   Fiorentino in the civil case.  There's also a question of

17   irreparable harm that was raised and thrown out to Your Honor

18   without any real meat or substance to it.  If Your Honor looks

19   at the transcript, there was no irreparable harm identified.

20   The fact of the matter is, and there's no debating this, the

21   civil case, complaints and amended complaints were filed a full

22   year before the indictment and the superseding indictment

23   against Mr. Fiorentino.  The civil case alleges Mr. Fiorentino

24   engaged in a kickback scheme with one or more of the company's

25   vendors, harming the company to the tune of over $27 million.  I

1   won't go into the mechanics of the kickback scheme unless Your

2   Honor wants me to, but the documents that we're talking about,

3   the documents that have been described by Mr. Fiorentino's

4   counsel are documents that are highly relevant to what

5   transpired during that kickback scheme, including financial

6   documents.  And it wasn't just Mr. Fiorentino that was involved,

7   it's people around it.  And we, as a litigant in the civil case,

8   have the right to determine who participated with Mr. Fiorentino

9   in harming the company to the tune of over $27 million.

10        Judge Thornton heard all of that and said here's what

11   I'm going to do.  In order to address the question of

12   irreparable harm, which he also heard, he again said I'm going

13   to put protections in place and those protections are going to

14   be attorney's eyes only, nobody other than counsel at Akerman

15   can see the documents.  I'm going to say there's no publication,

16   no one can publish the documents unless they come back to me.

17   And clearly by Ms. Vazquez's admission, there's a

18   confidentiality order in place.  So there is no imminent threat

19   of irreparable harm anywhere.  They're already protected.

20        I'm going to address briefly the accusation that

21   Systemax is somehow coercing witnesses and that evidence will be

22   presented to that effect.  Well, with Mr. Fiorentino's pointing

23   out, this case has been going on for over two years.  In fact,

24   it's been over 40 days since Judge Thornton ordered the

25   production of the documents from the government.  If Mr.

1    Fiorentino intended to move for protective order and use some

2    allegations, some baseless, shameless allegations of coercing

3    witnesses, they're going to throw that fire bomb in this case

4    Your Honor, at some level they're required to present Your Honor

5    with that evidence today and not have Your Honor make some

6    determination on a protective order based on speculation and

7    supposition that at some point in time, who knows when, they

8    will present Your Honor with evidence that my clients have

9    coerced witnesses testimony.  That evidence, if they have it,

10   would be page one of their brief.  They don't have it and it's

11   improper to present that to Your Honor.  I apologize for

12   objecting during the argument, it just stunned me a little bit

13   when she said it.

14          The ongoing grand jury investigation, Judge.  The

15   government's made clear on page six of its brief, category

16   number one, that none of those documents have -- relating to

17   that investigation have been turned over to Mr. Fiorentino.  So

18   clearly, our document requests in the state court case will not

19   address those documents and they're not required to turn over

20   documents they don't have at this point in time.

21          There was also some mention about alternatives to

22   getting the document.  What alternatives?  They're seeking a

23   stay of the civil court case pending outcome of the criminal

24   case which is far and above what Judge Thornton had in mind to

25   begin with.  But if that's the case, Judge, there is no

1  alternative.  And as I mentioned before, they talked about

2  contesting the voracity and authenticity, they'll have that

3  opportunity in the state court also.

4       The fact is, Judge, there are four requirements that

5  they state in their briefs, I'm not sure I agree with them, but

6  let's address them, right?  The privacy issue, right?  We have

7  already distinguished the cases.  This is not the scenario

8  contemplated where the press is seeking information.  They

9  haven't cited a single case that's similar to the facts here. In

10  fact, in the *Kravitz* case that they cite, the court did unseal

11  some of the documents to the press.  In the *Global Airspace*

12  case, Judge, the statement is civil discovery during a related

13  criminal proceeding is permissible.  That makes sense because if

14  Your Honor enters this protective order and courts across the

15  land enter similar protective orders, all civil cases that have

16  a related criminal proceeding would be stayed.  That would be

17  tactic number one.  Litigation tactic number one by the criminal

18  defendant who is also a defendant in a civil case.  That can't

19  be what's contemplated under the law, and certainly not what's

20  contemplated by Judge Thornton because he denied the stay.

21       They talk about a Sixth Amendment right being impeded

22  upon, somehow that their strategy in the criminal case will be

23  revealed by production of the documents received from the

24  government.  Well, the key there is Your Honor, it's not

25  documents produced by Carl Fiorentino that we're asking for, and

1    we have no way of determining which documents Carl Fiorentino

2    produced.  We're asking for documents that Mr. Fiorentino and

3    his counsel received.  That does not in any way reveal any kind

4    of strategy, to the extent that's even material.

5         They talk about the privacy interests of unnamed third

6    parties, none of those third parties are sitting here.  I'm sure

7    by now they've identified them and none of them are sitting

8    here.  There is no sidebar with Your Honor to discuss who these

9    third parties are and what their positions are, none of that.

10   All they've identified is Mr. Fiorentino's wife and I think his

11   child.  I may be missing that.  Fact of the matter is Mr.

12   Fiorentino's wife would be a recipient of the fruit of the

13   illegal conduct and maybe even been a participant in all of

14   that, Your Honor.  At the end of the day, even so, we get the

15   information, we can't use it until we go back to Judge Thornton

16   and say Judge Thornton, this information is relevant to our

17   case, he makes a determination as to whether the documents

18   pertaining to Mr. Fiorentino's wife and children are relevant to

19   the case and we move on from there.

20        There's also some reference to local Rule 77.2, that

21   does not apply in this situation, Your Honor.  Judge Thornton

22   heard and rejected that argument and also again put protections

23   in place to prevent against any Rule 77.2 violations.

24        If Your Honor has no further questions, thank you very

25   much.

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

```
 1              THE COURT:  All right.  Thank you.

 2              MS. PINERA:  Your Honor, may I briefly address?

 3              THE COURT:  Very briefly.  Go ahead.

 4              MS. PINERA:  Yes.  Just to be very clear, we're not

 5    seeking to overturn Judge Thornton's order, we're not seeking a

 6    stay in the civil case.  There are nine other litigants in the

 7    civil case which are not currently before the court.  So all

 8    we're seeking is a protection from this court for discovery,

 9    Rule 16 discovery in this case.  The parties are free to seek

10    discovery through other alternative means.  So we're not seeking

11    a stay, he's mentioned that several times and so has the

12    government.  On the contrary, that case the stay was denied.

13    And Judge Thornton, as Mr. Garvin read, left open the

14    possibility and deferred to Judge Martinez in deciding because

15    Judge Thornton understands that the criminal case and Mr.

16    Fiorentino's rights are paramount.

17              Second Your Honor, Mr. Marsh mentioned protections,

18    that there's adequate protections.  The first thing I'd like to

19    point out, and I apologize for this initial representation, but

20    civil counsel just pointed out that the confidentiality order in

21    that case has yet to be signed by the court as far as I

22    understand it.  That's correct, right?  So there is currently in

23    place no confidentiality order signed by a court as far as I

24    know.

25              The other thing, which I actually forgot to address
```

1   when the court asked me about the harm, the specific harm,

2   Mr. Marsh reminded me about the motion to suppress, Judge.  They

3   are valid and we intend to file a motion to suppress in this

4   case regarding all the materials that were obtained from Mr.

5   Fiorentino's house.  Now, that is a very important element

6   because if, as we anticipate, those documents are suppressed,

7   everything that was obtained from his house, and it has already

8   been turned over to a third party, then essentially they're

9   using documents that the court determined were obtained in

10  violation of the constitution to do their own investigations and

11  proceed and find other evidence for the civil case.  And that's

12  sort of the "cat out of the bag" scenario.  That's the

13  irreparable harm, Your Honor.

14          And lastly, I'd like to let the court know where we are

15  with the civil case.  We actually filed an appeal at the Third

16  DCA right now of Judge Thornton's order, and it's a pending

17  motion for a stay of Judge Thornton's discovery order.  That's

18  where that case is right now.

19          So in closing, I just want to quote from the Eleventh

20  Circuit case and what the law is and what this court should

21  properly do in granting a protective order.  Discovery, and I

22  quote from *Anderson, United States versus Anderson*, discovery,

23  whether civil or criminal, is essentially a private process

24  because the litigants and the courts assume that the sole

25  purpose of discovery is to assist trial preparation.  That is

1  why the parties regularly agree and courts often order that

2  discovery information remain private.  All we're asking this

3  court is during the pendency of this criminal case, that the

4  discovery remain private between the only two parties in this

5  case, the United States and Carl Fiorentino.

6          Thank you.

7          THE COURT:  All right.

8          MR. MARSH:  Your Honor, can I clarify one thing?

9          THE COURT:  All right.  Let's take one more shot.

10          MR. MARSH:  The protective order in the civil case was

11  signed by Mr. Fiorentino's counsel.

12          THE COURT:  All right.

13          MR. MARSH:  And in denying the motion for

14  reconsideration, Your Honor, Judge Thornton said the matter will

15  proceed subject to the confidentiality order.

16          THE COURT:  All right.  The court will take this matter

17  under advisement and get out a ruling very shortly.  I

18  appreciate your efforts.  Thank you.

19          COURTROOM DEPUTY:  All rise.

20          (PROCEEDINGS CONCLUDED)
                        * * * * *
21              C E R T I F I C A T E
    I certify that the foregoing is a correct transcript from the
22  record of proceedings in the above-entitled matter.

23

24  _____        /s/ Dawn M. Whitmarsh
    Date                     DAWN M. WHITMARSH, RPR
25

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**